United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ANDES VERA,

        Plaintiff,

    v.

A. BARAJAS,

        Defendant.

Case No. 24-cv-06886-VKD

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 19

In this action, plaintiff Andes Vera, a state prisoner who is representing himself, asserts a claim against defendant Officer A. Barajas under 42 U.S.C. § 1983 for violation of Mr. Vera's First Amendment rights. Dkt. No. 1. Specifically, Mr. Vera contends that Mr. Barajas threatened to file, and did file, a false Rules Violation Report against Mr. Vera in retaliation for Mr. Vera's filing a grievance against Mr. Barajas for confiscating and refusing to return Mr. Vera's Hiteker-brand tablet. *Id.* The Court found the complaint, liberally construed, stated a cognizable claim of retaliation.[1] Dkt. No. 7 at 3.[2] Mr. Barajas now moves for summary judgment. Dkt. No. 19[3]; *see also* Dkt. No. 31. Mr. Vera opposes the motion. Dkt. No. 26.[4]

---

[1] All parties have consented to magistrate judge jurisdiction. Dkt. Nos. 3, 12.

[2] Page number citations are to those assigned by the ECF system.

[3] In support, Mr. Barajas relies on his declaration (Dkt. No. 19-1) along with Exhibits A through M (Dkt. Nos. 19-2 thru 19-14), the declaration of non-party Grievance Coordinator R. Monroy (Dkt. No. 19-15) along with Exhibits A through I (Dkt. Nos. 19-16 thru 19-24), and the declaration of Deputy Attorney General Kendall W. Hannon (Dkt. No. 19-25) along with exhibits A and B (Dkt. Nos. 19-26, 19-27).

[4] In support, Mr. Vera relies on his declaration (Dkt. No. 26 at 8-11) along with Exhibits A thru C (Dkt. No. 26 at 12-91). Mr. Vera also relies on his "verified complaint." Dkt. No. 26 at 1.

The Court finds this matter suitable for resolution without oral argument. *See* Civil L.R. 7-1(b). For the reasons explained below, the Court grants defendant's motion for summary judgment.

## I.    BACKGROUND

The following facts are undisputed unless otherwise noted.

### A.    Parties

At all times relevant to this action, Mr. Vera was incarcerated at the Correctional Training Facility ("CTF"), a state prison in Soledad, California. Dkt. No. 1 at 2. He was housed in Facility C at CTF and worked in the prison culinary warehouse. Dkt. No. 26 at 44 (Vera Dep. 17:11-16). Mr. Barajas was a correctional officer at CTF and a member of CTF's Investigative Services Unit ("ISU"). Dkt. No. 1 at 6; Dkt. No. 19-1 ¶¶ 2, 3. ISU is responsible for ensuring the safety and security of CTF. Dkt. No. 19-1 ¶ 3.

### B.    Prisoner Access to Mobile Electronic Devices

Beginning in 2015, the California Department of Corrections and Rehabilitation ("CDCR") began allowing prisoners to have approved mobile electronic devices, specifically tablets or MP3 players, for personal use, so long as the devices met certain criteria and were purchased from a CDCR-approved vendor. Dkt. No. 19-1 ¶ 11. Approved devices could not have any wired or wireless communication capabilities, such as Wi-Fi, Bluetooth, or cellular service. *Id.* In addition, approved devices were required to have tamper-resistant security screws to prevent access to internal device components. *Id.*; *see also* Dkt. No. 19-3 at 2-3.

As pertinent to this case, CTF prisoners were permitted to purchase Hiteker brand tablets from CDCR's approved vendor. Dkt. No. 19-1 ¶ 12. These tablets allowed prisoners to listen to music, read books, and play approved games. *Id.* A prisoner who wished to add content to his tablet had to purchase the content from the approved vendor. *Id.* Prisoners were not permitted to install purchased content on their own; rather, they had to return the tablet to the vendor so that the new content could be installed. *Id.* The tablets were designed to prevent tampering and to prevent installation of unauthorized components and software. *Id.*

In April 2020, ISU received information from a confidential source that prisoners were

United States District Court
Northern District of California

United States District Court
Northern District of California

altering their Hiteker tablets in order to gain access to Wi-Fi networks, download unauthorized material, and communicate via social media applications. *Id.* ¶ 13. Over the following eight months, CTF investigated the confidential source's information and was able to corroborate it. *Id.* ¶ 14. The investigation revealed that several prisoners had been able to alter their Hiteker tablets to bypass the default software security controls, gain access to the tablets' communication capabilities, download unauthorized applications or illicit content, engage in unmonitored communications, and transfer data freely from one tablet to another. *Id.* It appeared that cellular telephones provided the critical link, serving as Wi-Fi hotspots that allowed the altered tablets to access the internet. *Id.* In CTF's view, these altered tablets posed a threat to the safety and security of CTF and other CDCR institutions. *Id.* ¶ 15.

As a result of the investigation, the CDCR's Division of Adult Institutions issued an order in December 2021 requiring inspection of all Hiteker tablets and confiscation of any altered tablets. *Id.* ¶ 16. Following this directive, CTF inspected every prisoner tablet over the course of three days. *Id.* ISU confiscated more than 150 tablets that had been altered and/or contained unauthorized content, representing approximately 10% of all tablets in the prison. *Id.*; *see also* Dkt. No. 19-4 at 2-4.

### C.    Modified Programming at CTF Facility C

Between April and July 2023, CTF correctional officers discovered a large quantity of contraband in the housing unit of Facility C, where Mr. Vera was housed, including 35 prisoner-manufactured weapons, 31 cellular telephones, and substantial quantities of drugs. Dkt. No. 19-1 ¶ 4. As a result, on July 20, 2023, Facility C was placed on modified programming, restricting prisoners' movements, for a period of eleven days to permit staff to search for additional contraband. *Id.*; *see also* Dkt. No. 19-2 at 2-3. During modified programming, only critical workers were permitted to leave their housing units (under escort), move to other areas of the prison, and interact with prisoners from other units. Dkt. No. 19-1 ¶ 6. ISU and other correctional officers planned to conduct a systematic search of Facility C. *Id.* ¶ 5. ISU suspected that, once the search was announced, prisoners would attempt to move contraband around the prison to prevent it from being discovered. *Id.* ¶ 6. ISU further suspected that critical workers, like Mr. Vera,

United States District Court
Northern District of California

would likely be used to smuggle contraband in and out of Facility C, as they were the only prisoners permitted to leave their housing units. *Id.* ¶ 6. To prevent contraband smuggling by critical workers, ISU decided to search all prisoners moving through the central corridor of Facility C as they left their housing units and moved to their work assignments. *Id.* ¶ 7.

On the morning of July 21, 2023, the day after Facility C was placed on modified programming, Mr. Barajas was in the central corridor of Facility C together with other ISU officers and correctional staff. *Id.* ¶ 8. At approximately 10:00 a.m., Mr. Barajas observed several prisoners, including Mr. Vera, leave the C-wing housing unit, escorted by correctional officers. *Id.* Mr. Vera was a critical worker in the culinary warehouse and was on his way to his work assignment. *Id.*; Dkt. No. 1 at 6 ¶ 6. Mr. Barajas and the other officers conducted clothed body searches of Mr. Vera and the other prisoners for contraband. Dkt. No. 19-1 ¶ 9. During the search, Mr. Barajas discovered a cellular telephone and a Hiteker brand tablet in Mr. Vera's pocket. *Id.*; Dkt. No. 1 at 6 ¶ 6. Mr. Vera indicated to Mr. Barajas that both devices were his. Dkt. No. 1 at 6 ¶¶ 6, 7; Dkt. No. 19-1 ¶¶ 9, 27. Mr. Barajas confiscated both items. Dkt. No. 1 at 6 ¶ 6; Dkt. No. 19-1 ¶ 9. According to Mr. Vera, when he confiscated these items, Mr. Barajas remarked, "I'm not returning anything back to you, you shouldn't have had your Tablet while having this cell phone!" Dkt. No. 1 at 6 ¶¶ 6, 7.

On July 26, 2023, Mr. Barajas prepared a Rules Violation Report ("RVR") charging Mr. Vera with possession of a cellular telephone in violation of section 3006(a) of Title 15 of the California Code of Regulations. Dkt. No. 19-1 ¶ 19; Dkt. No. 19-5. Mr. Vera pled guilty to this charge. Dkt. No. 19-5 at 7.

On August 7, 2023, Mr. Vera submitted a GA-22 form asking for the return of his tablet but received no response. Dkt. No. 1 at 6 ¶ 8; *id.* at 15; Dkt. No. 26 at 63-64 (Vera Dep. at 36:13-37:9). On August 15, 2023, Mr. Vera submitted a grievance alleging that his tablet had been stolen and demanding that Mr. Barajas return it. Dkt. No. 1 at 7 ¶ 9; Dkt. No. 19-15 ¶ 3; Dkt. No. 19-16.

**D.      Investigation into Mr. Vera's Hiteker Tablet**

Although Mr. Barajas prepared an RVR on July 26, 2023, with respect to the cellular

4

telephone confiscated from Mr. Vera, he did not prepare an RVR with respect to the tablet at that time. According to Mr. Barajas, when he confiscated Mr. Vera's tablet on July 21, 2023, he suspected that the tablet had been altered,[5] but he could not conclude that it had been altered without first conducting an investigation of the device. Dkt. No. 19-1 ¶ 20. Mr. Barajas attests that he was not able to conduct an investigation of the tablet for approximately one month. *Id.* He explains that the CTF-wide search for contraband yielded 70 cellular telephones and 40 prisoner manufactured weapons. *Id.*; *see* Dkt. No. 19-6. The investigation of this contraband needed to be performed alongside, and balanced with, ISU's critical day-to-day responsibilities of investigating and responding to criminal activity inside the prison. Dkt. No. 19-1 ¶ 20(c).

On August 25, 2023, after Mr. Vera had submitted his grievance alleging theft of the tablet, Mr. Barajas performed an inspection of Mr. Vera's tablet. *Id.* ¶ 21; *see also* Dkt. No. 19-7 at 2-3. Although Hiteker tablet cases were normally secured by tamper resistant screws, Mr. Barajas discovered that the back case of the tablet could be removed. Dkt. No. 19-1 ¶ 21. Mr. Barajas also discovered that an SD card reader had been soldered onto the tablet's motherboard. *Id.* An SD card reader is a component that allows a user to insert an SD card into a slot, enabling the tablet user to download and install software applications and other content. *Id.*; *see also* Dkt. No. 19-8. Relying on his training and experience, Mr. Barajas says he determined that the SD card reader was added to the tablet after manufacture and after the tablet had been provided by the vendor, and that this constituted an unauthorized alteration of the tablet. Dkt. No. 19-1 ¶ 22. In reaching this conclusion, Mr. Barajas noted that approved Hiteker Model U804MC tablets available for purchase by prisoners did not have SD card readers. *Id.*; *compare with* Dkt. No. 19-9. He compared Mr. Vera's Model U804MC tablet to another prisoner's unaltered Model U804MC tablet and observed no SD card reader in the unaltered tablet. Dkt. No. 19-1 ¶ 22. Further, Mr. Barajas attests that in his experience, other Hiteker tablet models that include SD card

---

[5] Mr. Barajas attests that his suspicions were based on two observations: (1) Mr. Vera had his tablet with him outside of his housing unit while on his way to his work assignment, during a time when CTF had reason to believe critical workers, like Mr. Vera, would be used to move contraband during modified programming, and (2) Mr. Vera had a tablet together with a contraband cellular telephone that could provide internet access for the tablet. Dkt. No. 19-1 ¶ 18.

5

readers have a "cut out" in the case so that an SD card can be placed in the reader without having to take the case apart. *Id.* Mr. Vera's tablet case did not have this cut out. *Id.*

Mr. Barajas then inspected the contents of the tablet and discovered further evidence that it had been altered. *Id.* ¶ 23. First, he swiped left on the tablet's home screen which revealed a second screen containing an application called, "STRIKERS 1945 WW." *Id.* ¶ 23(a). Clicking on this application caused the screen to turn black and display the "Google Play" logo followed by a popup message stating, "STRIKERS 1945 WW won't run without Google Play services, which is not supported by your device." *Id.* Mr. Barajas attests that "Google Play" is Google's online application store and requires an internet connection to use. *Id.* Mr. Barajas further attests, that in his training and experience, authorized applications obtained from CDCR's approved vendors do not use Google Play because prisoners' tablets are not supposed to have internet connectivity. *Id.* The presence of the "STRIKERS 1945 WW" application on the tablet and the popup message referencing Google Play caused Mr. Barajas to suspect that Mr. Vera's tablet had been altered from its original state to allow applications to be installed from an external source. *Id.*; *see also* Dkt. No. 19-10.

Second, in exploring the tablet's software settings, Mr. Barajas discovered an application called "z" hidden in the tablet's software settings. Dkt. No. 19-1 ¶ 23(b). When he opened this "z" application, Mr. Barajas saw a second application called, "Stream Master," which then displayed the message "Unfortunately, Stream Master has stopped." *Id.* Mr. Barajas says he recognized this message as similar to those appearing on other confiscated tablets that had been altered. *Id.* When he held down the circle button on the bottom of the tablet's screen, the tablet responded by displaying a screen requesting a password. *Id.* This password prompt confirmed Mr. Barajas's suspicion that the tablet had been altered, as no application from an authorized source permits a prisoner to hide information behind a password. *Id.* Based on his experience with altered tablets, Mr. Barajas believed the "z" and "Stream Master" applications on Mr. Vera's tablet acted as a file vault from which, with the correct password, contraband material (e.g., photographs, movies, or TV-shows) could be accessed. *Id.*; *see also* Dkt. No. 19-11. Based on these findings, Mr. Barajas concluded that Mr. Vera's tablet had been altered such that it

United States District Court
Northern District of California

constituted a "wireless device component," specifically, a "memory storage device," in violation of Title 15, section 3006(c)(20) of the California Code of Regulations.  Dkt. No. 19-1 ¶ 24.

While Mr. Vera insists that he purchased the Hiteker tablet himself and that it was not altered, *see* Dkt. No. 26 at 75-76 (Vera Dep. at 48:23-49:2); Dkt. No. 1 at 6 ¶ 6, he also does not dispute the specific findings Mr. Barajas made during his investigation of the tablet, *see generally* Dkt. No. 26 at 1-11.

### E.    Interview of Mr. Vera

After completing his inspection of the tablet on August 25, 2023, Mr. Barajas contacted Mr. Vera later that day at approximately 2:00 p.m., to interview him about the tablet and his findings.  Dkt. No. 19-1 ¶ 25.  They met in the Facility C Program Office.  *Id.*  The interview was audio recorded in its entirety, and Mr. Barajas submits that recording as evidence along with a transcript.  *Id.* ¶ 26; *see also* Dkt. No. 19-12 (audio recording); Dkt. No. 19-25 ¶ 3; Dkt. No. 19-27 (transcript of audio recording).

According to the audio recording and transcript of the interview, Mr. Barajas acknowledged that he was aware Mr. Vera wanted his tablet back but that he had some questions.  Dkt. No. 19-27 at 4 (Tr. at 2:13-15).  He then presented Mr. Vera with the tablet and had him confirm that it was his and in the same condition as when it had been confiscated.  *Id.* at 6 (Tr. at 4:8-22).  Mr. Barajas observed Mr. Vera take the tablet and swipe left to the second home screen which contained the "STRIKERS 1945 WW" application.  Dkt. No. 19-1 ¶ 27.  Mr. Barajas believed that this reflected Mr. Vera's knowledge of the existence the "STRIKERS 1945 WW" application and his familiarity with the tablet.  *Id.*  Mr. Vera does not dispute that he made the swipe-left gesture Mr. Barajas describes to access the "STRIKERS 1945 WW" application on the tablet.  *See generally* Dkt. No. 26 at 1-11; *see also* Dkt. No. 19-27 at 6(Tr. at 4:5-22).  Mr. Barajas then explained to Mr. Vera his observation that the SD card reader had been soldered onto the tablet's motherboard and shared his other observations about unauthorized applications, including password-protected content, on the tablet.  Dkt. No. 19-1 ¶ 27; Dkt. No. 19-27 at 7-9 (Tr. at 5:1-7:20).  Mr. Barajas then informed Mr. Vera that, based on these findings, Mr. Barajas would prepare an RVR charging Mr. Vera with possession of an altered tablet.  Dkt. No. 19-1 ¶ 27; Dkt.

No. 19-27 at 10 (Tr. at 8:9-15) ("[S]o you're not going to get the tablet back. . . alright? But you are going to—you are going to get a write-up for it being altered because it was altered from its original state, and it's going to go down as a—it being a memory storage device. . . .").

At the conclusion of the interview, Mr. Vera asked Mr. Barajas why he had delayed issuing the RVR with respect to the tablet. Dkt. No. 19-27 at 11 (Tr. at 9:6-8). Mr. Barajas responded that he had only recently completed his investigation and discovered the tablet had been altered, given the large number of cellular telephones confiscated during the "mass search." *Id.* at 11-12 (Tr. at 9:9-22, 10:1-22). When Mr. Vera asked why he was written up for possession of a cellular telephone right away and not the tablet, Mr. Barajas explained that physical possession of a contraband cellular telephone was easily proven while the tablet needed to be investigated to determine whether it had been altered. *Id.* at 13 (Tr. at 11:5-16). Mr. Vera indicated he understood, and the interview ended cordially, with Mr. Vera stating, "Have a nice day," and Mr. Barajas responding, "You have a good day." *Id.* at 13-14 (Tr. at 11:17-21, 12:6-7).

### F.     RVR and Disciplinary Hearing for Possessing an Altered Tablet

On August 30, 2023, Mr. Vera filed another grievance (Log No. 442749) against Mr. Barajas, "alleging among other things: Retaliation, Intimidation, Harassment, etc." Dkt. No. 1 at 7-8 ¶ 12. In the grievance, Mr. Vera claimed that during the interview on August 25, 2023, Mr. Barajas told him that he was not returning Mr. Vera's tablet and that he was going to issue an RVR. Dkt. No. 19-19 at 2. Mr. Vera claimed Mr. Barajas's statement constituted retaliation "based on the timing" because he had filed a prior grievance against Mr. Barajas. *Id.*[6]

On September 5, 2023, Mr. Barajas completed an RVR charging Mr. Vera with possession of a wireless component (*i.e.*, a tablet altered to function as a memory storage device) and submitted it to his supervisor the same day. Dkt. No. 19-1 ¶ 29; *see also* Dkt. No. 19-13. After submitting the RVR, Mr. Barajas attests that he had no further role in its processing. Dkt. No. 19-1 ¶ 29.

---

[6] The grievance was denied by the Office of Appeals on May 10, 2024, based on the finding that the RVR was issued "due to the discovery of contraband" and not in retaliation. Dkt. No. 19-24 at 2. The decision exhausted Mr. Vera's administrative remedies. *Id.*

Although the RVR was approved by Mr. Barajas's supervisor (A. Virrueta) on September 5, 2023, for reasons no one explains, Mr. Vera was not served with a copy of the RVR until over a year later, on September 11, 2024. Dkt. No. 19-14 at 1; *see also* Dkt. No. 19-1 ¶ 33. A disciplinary hearing was held on September 16, 2024. Dkt. No. 19-14 at 2. Mr. Vera declined to make a statement at the hearing. *Id.* at 5. The Senior Hearing Office ("SHO") found Mr. Vera not guilty of the charge based on "stacking." *Id.* at 6. That is, the SHO apparently concluded that because Mr. Vera had already received a first RVR (possession of a cellular telephone) with a nexus to the second RVR (possession of a wireless device component)—both devices were discovered in his possession on the same date—it was inappropriate to "stack" multiple RVRs "per Memorandum dated 06/23/98." *Id.*; *see also* Dkt. No. 19-1 ¶ 33; Dkt. No. 26 at 13-15.

On October 1, 2024, Mr. Vera filed the instant action, alleging that Mr. Barajas retaliated against Mr. Vera for filing the August 15, 2023 grievance by threatening to and then issuing a second RVR regarding Mr. Vera's possession of an altered tablet, conduct Mr. Vera contends had a "chilling effect" on his exercise of his First Amendment rights. Dkt. No. 1 at 9, 10 ¶¶ 16, 19. Mr. Vera seeks declaratory and injunctive relief, as well as damages. *Id.* at 11-12.

## II.    LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *See id*. The non-moving party may not rest

United States District Court
Northern District of California

upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *See id*. A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248-49.

## III. DISCUSSION

Mr. Barajas moves for summary judgment on the grounds that there is no genuine dispute of material fact (1) that he issued an RVR charging Mr. Vera with possession of an altered tablet without regard to Mr. Vera's earlier filed grievance, or (2) that he issued the RVR in furtherance of a legitimate correctional goal. Dkt. No. 19 at 1. Mr. Barajas also moves for summary judgment on the ground that he is entitled to qualified immunity. *Id.* at 14.

### A. First Amendment Retaliation

Mr. Vera asserts that Mr. Barajas became aware on August 25, 2023, of the grievance that Mr. Vera had filed against him on August 7, 2023, and in response to that grievance threatened to issue an RVR against Mr. Vera. Dkt. No. 1 at 7 ¶ 10. Specifically, Mr. Vera alleges that Mr. Barajas "generat[ed] a fabricated, retaliatory RVR Log No. 7345455 falsely accusing [him] of 'possession of a wireless device component,' in an effort to cover-up [Mr. Barajas's] theft" of the tablet. *Id*. at 7 ¶ 11; *id.* at 17-18.

Within the prison context, a claim of First Amendment retaliation requires five elements: (1) an assertion that a state actor took some adverse action against an prisoner (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the prisoner's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Here, there is no dispute that the first element of the claim is satisfied: Mr. Barajas is a state actor, and charging, or threatening to charge, a prisoner with a serious violation is an adverse action, even if Mr. Vera was ultimately found not guilty and suffered no penalty for the violation. *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) ("[T]he mere *threat* of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect."). Likewise, there is

United States District Court
Northern District of California

United States District Court
Northern District of California

no dispute that the third element is satisfied: Mr. Vera's filing of a grievance is protected conduct. *Rhodes*, 408 F.3d at 567. The parties principally disagree regarding whether Mr. Vera can establish the second and fifth elements of his claim.[7]

### 1.    Second element:  Causation

To prevail on his retaliation claim, Mr. Vera must establish the second element: causation. That is, he must put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact that Mr. Barajas intended to take the adverse action out of "retaliatory animus" to "silence and to punish" him, as opposed to for some other reason. *Shepard v. Quillen*, 840 F.3d 686, 689-91 (9th Cir. 2016) (finding genuine issue of material fact as to whether defendant sent prisoner to administrative segregation with intent to follow 15 Cal. Code Regs. § 3335(a), or instead to retaliate for prisoner's complaint about staff misconduct). In addition to direct evidence, evidence probative of retaliatory animus includes proximity in time between the protected speech and the alleged adverse action, the prison official's expressed opposition to the speech, false or pretextual reasons given by the prison official for the adverse action, and inconsistent action by prison officials. *See id*. at 690; *McCollum v. California Dep't of Corr. & Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011); *Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003). Mere speculation that a prison official acted with retaliatory animus or motive is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases) (affirming grant of summary judgment where no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit).

Mr. Vera relies heavily on the proximity in time between the filing of his August 15, 2023 grievance and Mr. Barajas's issuance of the RVR charging Mr. Vera with possession of an altered

---

[7] The parties do not address the fourth element, but it is of no consequence. A plaintiff need not demonstrate that his speech actually was inhibited or suppressed; rather, the proper inquiry is whether the official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. *See Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999). Here, it cannot be seriously disputed that *if* a prison official charged, or threatened to charge, a prisoner with a serious violation *because* that prisoner filed a grievance, such action would chill the prisoner's exercise of his right to file grievances. *See, e.g., Rhodes v. Robinson,* 408 F.3d 559, 562 (9th Cir. 2005) ("Speech can be chilled even when not completely silenced.").

tablet, which he argues supports a finding that the second RVR was issued because of the grievance. Dkt. No. 26 at 2, 9; *see also* Dkt. No. 1 at 7 ¶ 10. For his part, Mr. Barajas argues that he did not immediately issue an RVR charging Mr. Vera with possession of an altered tablet because at the time he confiscated it, he had not yet determined that the tablet *was* altered, and the necessary investigation required time to complete. Dkt. No. 19 at 18. And it was only after observing Mr. Vera interact with the tablet in a manner that indicated Mr. Vera was well aware the tablet had been altered that Mr. Barajas advised Mr. Vera he would not be getting the tablet back and would be receiving an RVR for the tablet as a prohibited "memory storage device." *Id.* at 17. Mr. Vera does not offer any evidence contradicting Mr. Barajas's assertions regarding the need for investigation; he focuses solely on the sequence of events—the second RVR was issued about 10 days after Mr. Vera filed a grievance. However, the mere fact that Mr. Barajas informed Mr. Vera that he intended to issue a second RVR shortly after Mr. Vera filed a grievance claiming his tablet had been stolen is insufficient to establish a nexus between the two or to establish that Mr. Barajas acted with retaliatory animus. *See Long v. Sugai*, 91 F.4th 1331, 1339 (9th Cir. 2024) (sequence of events alone is insufficient to show retaliatory intent); *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of *post hoc, ergo propter hoc*, i.e., "after this, therefore because of this"); *see also Giles v. Forncrook*, No. 18-cv-07466-YGR, 2021 WL 783547, at *7 (N.D. Cal. Mar. 1, 2021) ("Retaliation is not established simply by showing adverse activity by defendant after protected speech; rather, Plaintiff must show a nexus between the two"); *Quiroz v. Horel*, 85 F.Supp.3d 1115, 1140 (N.D. Cal. 2015) ("However, without more, suspect timing is insufficient to lead to a reasonable inference of retaliatory motive."). Mr. Vera points to no evidence from which a reasonable factfinder could conclude that Mr. Barajas expressed opposition to Mr. Vera's having filed a grievance, that Mr. Barajas gave false or pretextual reasons for preparing the second RVR, or that Mr. Barajas's conduct was inconsistent with how CTF handled other instances of possession of an altered tablet by a prisoner.

In opposing Mr. Barajas's motion for summary judgment, Mr. Vera claims that during the interview Mr. Barajas made threatening remarks, raised his voice, and became agitated. Dkt. No. 26 at 10 ¶ 10. However, the audio recording of the interview contradicts Mr. Vera's account. Dkt.

No. 19-27. For example, Mr. Vera says he repeatedly denied that the tablet was his, but the audio recording contains no such denial; to the contrary, it reflects that Mr. Vera confirmed that the tablet was the one taken from him. *Compare* Dkt. No. 26 at 74-78 (Vera Dep. at 47:12-51:18) *with* Dkt. No. 19-27. Mr. Vera says that Mr. Barajas made an explicit reference to Mr. Vera's grievance at the outset of the interview, but no such remark appears in the recording. *Compare* Dkt. No. 26 at 74 (Vera Dep. at 47:14-16) *with* Dkt. No. 19-27. Mr. Vera also states that he challenged Mr. Barajas's qualifications or credentials to investigate altered tablets, but no such comments appear in the recording. *Compare* Dkt. No. 26 at 77-78 (Vera Dep. at 50:19-51:2) *with* Dkt. No. 19-27). Nothing in the audio recording of the interview suggests any connection between Mr. Vera's grievance and Mr. Barajas's stated plan to issue an RVR charging Mr. Vera with possession of an altered tablet. Mr. Vera claims that the audio recording was edited to omit "critical parts" of his conversation with Mr. Barajas, which he does not otherwise identify. Dkt. No. 26 at 10 ¶ 9. Rather, the audio recording has no obvious indicators of editing or omissions, and Mr. Vera offers no evidence to support his assertion that the recording does not accurately capture the interview. *See Scott v. Harris*, 550 U.S. 372, 380-83 (2007) ("[w]hen opposing parties tell different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment"; finding police officer was entitled to summary judgment based on qualified immunity where video evidence capturing plaintiff's reckless driving in attempting to evade capture utterly discredited plaintiff's claim that there was little or no actual threat to innocent bystanders such that); *see also Nilsson v. City of Mesa*, 503 F.3d 947, 952 n.2 (9th Cir. 2007) ("conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact") (citation omitted); *see also Bond v. Knoll*, No. EDCV 11-1929 PSG (JG), 2014 WL 7076901, at *10 (C.D. Cal. Dec. 10, 2014) (plaintiff's speculation that defendants' declarations and exhibits are fabricated insufficient to defeat summary judgment). Mr. Vera's mere speculation that Mr. Barajas acted with retaliatory animus or motive is not sufficient. *Wood*, 753 F.3d at 904. In short, there is no genuine dispute of fact regarding Mr. Barajas's statements to Mr. Vera, and those statements do not show retaliatory

United States District Court
Northern District of California

United States District Court
Northern District of California

animus or motive.

In opposing Mr. Barajas's motion, Mr. Vera also suggests that the fact he was found not guilty with respect to the second RVR is evidence that Mr. Barajas must have had a retaliatory animus "because Barajas was fully aware of CDCR's long standing policy concerning 'Clarification of Stacking as Related to the Inmate Disciplinary Process' dating back to June 23, 1998." Dkt. No. 26 at 9. This argument is not persuasive. The SHO's determination that the second RVR was inconsistent with the prison's policy against "stacking" violations arising out of the same event or circumstance has nothing to do with Mr. Barajas's decision to issue the RVR in the first place or his conclusion that the tablet had been altered and must be confiscated, or with Mr. Vera's claim.[8] That is, Mr. Vera's retaliation claim against Mr. Barajas is premised on the contention that Mr. Barajas threatened to issue, and subsequently issued, a "fabricated" RVR regarding a tablet Mr. Vera claims was "legally obtained" and "unaltered." Dkt. No. 1 at 5-7 ¶¶ 4, 6, 8, 11, 13. But there is no genuine dispute of fact that the findings that formed the basis for the second RVR were supported by the investigation Mr. Barajas conducted and were not fabricated. Indeed, the SHO did not conclude that the tablet was unaltered (as Mr. Vera claims) or that it had been wrongly confiscated by Mr. Barajas. Dkt. No. 19-14 at 6. Mr. Vera's possession of an altered tablet was a violation of the applicable regulations, and in his decision, the SHO indicated that the contraband was to be disposed of by the facility. *Id.* at 8. Mr. Vera was found not guilty solely because he had already been charged with and found guilty of a violation the SHO deemed "related during a single event." *Id.*; Dkt. No. 26 at 13-15. Nothing about this conclusion suggests that Mr. Barajas's preparation of the second RVR was pretextual. *See Shepard*, 840 F.3d at 690; *cf. Quiroz*, 85 F.Supp.3d at 1143 (finding disconnect between the issuance of, and the stated reasons for, the RVR lead to a reasonable inference that the reasons were pretextual).

In sum, Mr. Vera has identified no evidence, direct or indirect, sufficient to support the second element of his claim—i.e., that Mr. Barajas issued an RVR charging Mr. Vera with

_____

[8] The RVR for possession of an altered tablet specifically cited the earlier-issued RVR for possession of a cellular telephone. Both RVRs were approved by Mr. Barajas's supervisor, A. Virrueta.

possession of an altered tablet because Mr. Vera had earlier filed a grievance claiming Mr. Barajas stole his tablet. While Mr. Vera points to evidence that the two events are proximate in time, no reasonable fact finder could conclude that this evidence, without more, establishes the requisite causation, particularly given the other, undisputed evidence in the record.

### 2.     Fifth element: Legitimate correctional goal

Mr. Vera must also establish the fifth element of his claim: the absence of a legitimate correctional goal for the conduct of which he complains. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). If he makes such a showing in the first instance, the burden shifts to Mr. Barajas to show that the retaliatory action was narrowly tailored to serve a legitimate penological purpose. *See Schroeder v. McDonald*, 55 F.3d 454, 461-62 (9th Cir. 1995). Prison officials may not simply articulate a general justification for their actions; they must show why their particular action was reasonably related to the legitimate interest. *Shepard*, 840 F.3d at 692 (defendants must show that they placed plaintiff in administrative segregation because there were witnesses in general population whom he could have improperly influenced; not enough to simply assert that administrative segregation generally helps keep prisoners safe and investigations untainted).

Mr. Vera fails to carry his burden of showing the absence of legitimate correctional goals. *Pratt*, 65 F.3d at 806. Rather, Mr. Barajas has established that prisons have a legitimate penological interest in locating and confiscating contraband, including mobile devices that have been modified to permit internet access and that have unauthorized content. Likewise, there can be no dispute that instituting disciplinary proceedings for those prisoners who possess such devices furthers the legitimate correctional goal of preserving order and discipline. *See supra* at 2-3; *see Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (affirming summary judgment of no retaliation where reclassification of prisoner following disciplinary proceedings served legitimate penological purpose of maintaining prison discipline); *Oden v. Reed,* No. 22-cv-06980 BLF, 2024 WL 3823804, at *7 (N.D. Cal. Aug. 13, 2024) ("charging inmates with a rules violation through disciplinary proceedings is reasonably related to" "legitimate correctional goal to preserve institutional order and discipline"). Here, state regulations provide for the issuance of an RVR as one of several methods a prison may use to maintain discipline, Cal. Code Regs., tit. 15, § 3312,

15

and it is undisputed that the second RVR issued by Mr. Barajas was issued pursuant to these state regulations, specifically section 3315(a)(3)(X) (possession of any wireless communication device, including a memory storage device).

\*\*\*

Accordingly, the Court concludes that there is no genuine dispute of material fact as to Mr. Vera's retaliation claim, and Mr. Barajas is entitled to summary judgment with respect to this claim.

### B.    Qualified Immunity

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a defendant has raised qualified immunity as a defense to a claim, a plaintiff must show "(1) that the right was violated; and (2) that the right was clearly established at the time of the alleged misconduct." *Sato v. County of San Bernardino*, No. 22-55853, 2023 WL 7211397, at \*3 (9th Cir. Nov. 2, 2023) (quoting *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017)).

It is clearly established that a prison official may not retaliate against a prisoner for exercising his First Amendment rights, and that those First Amendment rights include the right to file a grievance. *Rhodes*, 408 F.3d at 567-68; *Watison v. Carter*, 668 F.3d 1108, 1114-18 (9th Cir. 2012). However, Mr. Vera has not sustained his burden on summary judgment to show that a reasonable factfinder could conclude that Mr. Barajas retaliated against him for exercising his First Amendment right to file a grievance. *Isayeva*, 872 F.3d at 946.

Accordingly, Mr. Barajas is entitled to qualified immunity. *See Smith v. Agdeppa*, 56 F.4th 1193, 1200 (9th Cir. 2022).

### IV.    CONCLUSION

For the foregoing reasons, defendant A. Baraja's motion for summary judgment is granted. Mr. Vera's retaliation claim against defendant Barajas is dismissed with prejudice.

This order terminates Docket No. 19.

**IT IS SO ORDERED.**

Dated: March 16, 2026

Virginia K. DeMarchi
United States Magistrate Judge